IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-23-119-RAW |
| ) | |
| BYRON KEITH SPENCER, ) | |
| ) | |
| ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the court are the objections of the defendant (#69) and the partial objection of the government (#68) to the Report and Recommendation (#59) of the United States Magistrate Judge. The Magistrate Judge recommended that the defendant's motion to suppress be denied. In doing so, however, he found that the arresting officers were not properly cross-deputized. He relied instead on the "good faith" exception under the Fourth Amendment. Consequently, both parties object at least in part.

Under Rule 59(b)(1) F.R.Cr.P., the district court may refer suppression motions to a Magistrate Judge for a recommended disposition. In considering an objection, the district court must conduct de novo review and "may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Rule 59(b)(3). The undersigned has reviewed the record, including the hearing transcript and the exhibits.

The Report and Recommendation is extraordinarily thorough and thoughtful. The

reader is presumed to have familiarity therewith, and therefore the undersigned only elaborates on what appears to be the central issue regarding cross-deputization: the dual nature of the compact at issue. "But these agreements do not just reflect promises between the governmental parties. They also articulate legal rules that confer benefits and burdens on the polities those governments jointly govern in the ways more familiar to ordinary public law. The distinctiveness of their legal form, then, stems from their dual character as both contract-like instruments and public lawmaking instruments."  Bridget A. Fahey, *Federalism by Contract,* 129 Yale L.J. 2326, 2330 (2020).[1]

The government in its briefing emphasizes the "contractual" aspect, as well as tribal sovereignty. Presented as a witness was Victoria Holland, Deputy Attorney General for Seminole Nation. Her testimony sought to explain or interpret the compact under which law enforcement operated. Of course, "[u]nder federal contract principles, if the terms of a contract are not ambiguous, this court determines the parties' intent from the language of the agreement itself." *Citizen Potawatomi Nation v. Oklahoma,* 881 F.3d 1226, 1239 (10th Cir.2018). Evidently conceding ambiguity, Holland set forth her view that the Deputation Agreement (#58-4) is "the master cross-dep agreement" and that the addendum allows other

---

[1] The author of the article notes she excludes "agreements between Native Nations and federal, state and local governments. Those agreements have important intersections with the agreements I discuss here, but they have a distinctive history that deserves its own focused treatment." *Id.* at 2416 n.1. The undersigned is persuaded that, for purposes of the case at bar, the "important intersection" is the duality of public law and "private" contract.

entities to permit "blanket" cross-deputization.  (#65 at 26 ll.16-25 – 27 ll. 1-5; 11 ll.5-7 & 11 l.22).

> Q:  In other words, anybody who works or is a police officer for the Wewoka Police Department under that addendum is now, by definition, pre-cross deputized, right?
>
> *But that's nowhere in any of these agreements; is that right*?
>
> A: *No*.  Just generally that's how all of the tribes have operated because of the Joint Relations Act, they have to have that approval.
>
> So by entering into that addendum, that's our agreement that we recognize each other's law enforcement.
>
> (#65 at 36, lines 7-15)(emphasis added)

Q: I mean, the requirements or the terms of the non-SLEC commissions are covered under Exhibit 1.

A: Well, the non-SLEC commissions are basically determined by the tribe.

Q: *Where does it say that in the agreement*?

A: *It doesn't*.

(#65 at 37, lines 15-22)(emphasis added)

Even the Holland testimony left gaps, however.

Q: So a determination of the Indian status, of the Indian or non-Indian status informs the officer of the apparent prosecuting jurisdiction. Would you agree?

A : Well, first of all, it's commissioned pursuant to this agreement, *so I'm not sure* if that means to the addendum commissioned officers as the blanket cross-dep or just those who have their SLEC.

(#65 at 21, lines 23-25 – 22, lines 1-4)(emphasis added).

Q: Then the next sentence reads, "Any other agency party to this agreement may also commission the officers of any other agency party to this agreement." That's the non-SLEC commissions, correct?

A: *I would assume so,* yes.

(#65 at 32, lines 6-10)(emphasis added)

Ultimately, the undersigned agrees with the Magistrate Judge that "neither the Deputation Agreement nor the related Addendums contain provisions permitting 'blanket cross-deputization' among City of Wewoka police officers or District 22 Task Force officers with regard to tribal members within the boundaries of the Seminole Nation, or vice versa." (#59 at 10-11).

This conclusion itself distinguishes *United States v. Fowler,* 48 F.4th 1022 (9th Cir.2022), cited by the government. In *Fowler*, the court was able to point to express language in the agreement. *Id.* at 2024. It also appears all parties to the agreement signed it, save for a 2003 amendment. This is in contrast to the "workaround" which the Magistrate Judge found had been engaged in here. (#59 at 11).

The government asserts that "[n]o special piece of paper" is required for cross-deputization (#68 at 5) and that, as to the Seminole Nation and Wewoka, "apparently neither of those entities is troubled" by the arrangement. *(Id.* at 11). This moves beyond contractual interpretation to the view that, under tribal sovereignty, the practice under review is hermetically sealed from judicial consideration. The court disagrees. The government has chosen to indict the defendant in a United States District Court, and the United States is also a sovereign.

The government cites the sentence that "[t]his Agreement does not create any rights in third parties." (#58-4 at 3(D), page 4 of 14 in CM/ECF pagination). This cannot mean that a criminal defendant in federal court is barred from challenging the jurisdiction involving his arrest and search. The defendant is not a "third-party beneficiary" when viewing the agreement as a "private" contract between other parties, but viewing the agreement as a public legal basis to authorize an arrest and search, the defendant's rights arise from the Fourth Amendment.

5

The government appears to be drawing on the final paragraph of the Ninth Circuit's decision in *Fowler*. Indeed, the government quotes the final sentence: "The Fourth Amendment does not strip the Tribes of the sovereign authority to decide how – or whether – to enforce the provisions of their own agreements." 48 F.4th at 1028. In the case at bar, however, there are no "provisions" which clearly establish the Seminole Nation's view of "blanket" non-SLEC commissions. In *Fowler*, the court found the agreement clear, and that it mandated cross-deputized state officers to be issued and carry identification cards. "Trooper Moon's failure to carry an identification card was plainly a violation of the agreement, . . . ." *Id* (emphasis added). Here, the Magistrate Judge found (and the undersigned agrees) that the attempt to construct a "blanket cross-deputization" agreement resulted in a document that was anything but plain.[2] Under *Fowler*, tribal sovereignty permits tribal discretion to enforce a clear provision in a clear agreement  Discretion is a meaningless concept regarding a nebulous document like the one before the court.

The government also seeks to draw an analogy to the "*Petite* policy," discouraging successive prosecutions in state court and federal court. The Tenth Circuit holds that a defendant is not entitled to dismissal of an indictment even if the policy is violated. *See United States v. Morales,* 682 Fed.Appx. 690 (10th Cir.2017). The *Petite* policy is discretionary by its very terms. The government's burden to establish jurisdiction is not.

---

[2]As described in this order, even the Deputy Attorney General for the Seminole Nation noted the absence of governing language and fell back essentially on "that's our practice."

Neither *Fowler* nor the United States Supreme Court decisions it cites in its final paragraph deal with a situation as in the case at bar. A more pertinent decision (cited by the Magistrate Judge as well) appears to be *Ross v. Neff,* 905 F.2d 1349, 1354 (10th Cir.1990)("A warrantless arrest outside of the arresting officer's jurisdiction is analogous to a warrantless arrest without probable cause."). Subsequently, as also noted by the Magistrate Judge, the Tenth Circuit has held that *Ross* extends "no further than the unique factual circumstances that spawned it: that is, a warrantless arrest by state police on tribal land." *United States v. Pemberton,* 94 F.4th 1130, 1141 (10th Cir.2024)(quoting *United States v. Jones,* 701 F.3d 1300, 1312 (10th Cir.2012)). Such is the situation here. To the extent that the court's ruling impinges on tribal sovereignty, it is *de minimus.* The Seminole Nation may enter into a <u>properly-executed</u> deputation agreement, contemporaneously signed by the pertinent entities., which sets forth in clear language the desired cross-deputization.

The court now turns to the Magistrate Judge's application of the good-faith exception, to which the defendant objects. The court agrees with the Magistrate Judge's conclusion that "[i]t is clear from Major Vigil's testimony, as well as District Task Force Supervisory Agent Adam Good's, that Officers Vigil, Sego, and Perteet held a good faith belief that they had jurisdiction to detain, arrest, and question Defendant." (#59 at 13). The undersigned also finds correct the Magistrate Judge's reasoning as to the officers' reasonable reliance on third-party authorization, here the Deputation Agreement. (*Id.* at 17).

The defendant argues there is no evidence as to any such third-party authorization (#69 at page 25 of 28 in CM/ECF pagination) but the very existence of the Deputation Agreement makes this a logical inference, in the court's view. Now that the present litigation has resulted (for the first time) in the Deputation Agreement being successfully challenged, the undersigned also agrees with the Magistrate Judge that "reasonable reliance" will not be present henceforward. (#59 at 18-19).

Finally, the Magistrate Judge conducted a traditional analysis of the traffic stop itself (#59 at 19-27). The defendant objects (#69 at page 27 of 28 in CM/ECF pagination) but only on the basis of lack of jurisdiction, which argument the court has already rejected. While not required to do so under Rule 59 F.R.Cr.P., the undersigned has nevertheless reviewed the Magistrate Judge's thorough discussion and finds it correct.

It is the order of the court that the partial objection of the government (#68) and the objections of the defendant (#69) to the Report and Recommendation are overruled. The Report and Recommendation (#59) is approved and adopted as the order of the court. The motion of the defendant to suppress (#40) is hereby denied.

**ORDERED THIS 3rd DAY OF JUNE, 2024.**

_____
**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**